# UNITED STATES COURT OF APPEALS

# FOR THE TENTH CIRCUIT

RANDY TRAINOR,

      Plaintiff - Appellant,

v.

APOLLO METAL SPECIALTIES,
INC. and DANNY PILGRIM,

      Defendants - Appellees.

No. 01-5077

ORDER

Filed January 23, 2003

Before **SEYMOUR**, **ALDISERT**[*] and **EBEL**, Circuit Judges.

Having considered the "Appellant's Unopposed Petition for Rehearing or Motion to Correct Opinion" filed December 31, 2002, it is ordered that the petition for rehearing is denied. However, the motion for clarification is granted.

The court has determined that the opinion filed December 13, 2003, should be amended to include a footnote at the end of the decision on page 23. The

---

[*]The Honorable Ruggero J. Aldisert, Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

opinion is otherwise unchanged.  A copy of the amended opinion is attached to this order.

Entered for the Court
PATRICK FISHER, Clerk of Court

by:    /s/ A.J. Schuler
       Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 13 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

RANDY TRAINOR,

      Plaintiff-Appellant,

v.

APOLLO METAL SPECIALTIES,
INC. and DANNY PILGRIM,

      Defendants-Appellees.

No. 01-5077

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 00-CV-250-K)**

---

Donald Gregory Bledsoe (Steven A. Novick with him on the briefs), Tulsa, Oklahoma, for Plaintiff-Appellant.

Catherine Louise Campbell (Joseph A. Sharp, Karen M. Grundy and Matthew B. Free, with her on the brief), of Best & Sharp, Tulsa, Oklahoma, for Defendants-Appellees.

---

Before **SEYMOUR**, **ALDISERT**[*] and **EBEL**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

---

[*]The Honorable Ruggero J. Aldisert, Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

Randy Trainor sued his former employer, Apollo Metal Specialties, Inc., and Apollo's majority stockholder, Danny Pilgrim, alleging disability employment discrimination in violation of Title I of the Americans with Disabilities Act, 42 U.S.C. §§ 12111-17 ("ADA"), and raising state law claims of discrimination, retaliatory discharge, breach of contract, tortious interference with an employment contract, and false inducement to employment. The district court granted defendants' motion for summary judgment, ruling that Apollo was not an employer covered by the ADA because it did not have fifteen or more employees in each of twenty calendar weeks during the relevant period as required by 42 U.S.C. § 12111(5)(A)[1] and declining to exercise jurisdiction over the state law claims. Mr. Trainor appeals, contending the district court erred in placing the burden on Mr. Trainor to establish, in response to the summary judgment motion, the number and status of Apollo's temporary employees for purposes of the ADA's fifteen-employee requirement, and in holding that Mr. Pilgrim was not an Apollo employee. We reverse.

---

[1] Under the ADA, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 12111(5)(A).

**I**

Defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) or alternatively for summary judgment, contending the court lacked subject matter jurisdiction because Apollo was not within the ADA definition of an employer. In support of this motion, defendants attached corporate payroll records and an affidavit by Mr. Pilgrim. Mr. Trainor filed a brief in response and attached his affidavit. While noting some disagreement among the circuits and within this circuit as to whether meeting the employer definition in the ADA is an issue of subject matter jurisdiction,[2] the district court properly converted the motion to one

---

[2] The court compared *Zinn v. McKune*, 143 F.3d 1353, 1356 (10th Cir. 1998), and *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1069 (10th Cir. 1998), and expressed its view that the law in this circuit is unsettled with respect to whether the ADA's fifteen-employee requirement presents a jurisdictional issue. In attempting to clarify this question we begin by pointing out the distinction between ascertaining whether a company falls within the definition of "employer" set out in 42 U.S.C. § 12111(5)(A), and determining whether an employment relationship exists between an employer and a particular employee. While these two inquiries often overlap, they are not necessarily co-extensive. In some cases, the defendant's status as an "employer" within the statutory definition is undisputed and the only question is whether the plaintiff and the defendant have an employment relationship. *See, e.g., Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1328-30 (10th Cir. 2002); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1361 (10th Cir. 1993). In these cases, establishment of the employment relationship is an element of a plaintiff's prima facie case. *See Frank*, 3 F.3d at 1361. In the instant case, the existence of an employment relationship between plaintiff and Apollo is undisputed and the only question is whether Apollo is an "employer" within the statutory definition. This inquiry presents a question of subject matter jurisdiction. *See Ferroni v. Teamsters Local No. 222*, 297 F.3d 1146, 1151 (10th Cir. 2002). Confusion arises when, as here, ascertaining whether a defendant falls within the statutory definition requires the court to

(continued...)

-3-

for summary judgment. We have held that "[w]hen subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case, the jurisdictional claim and the merits are considered to be intertwined." *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987) (citing *Clark v. Tarrant County*, 798 F.2d 736, 742 (5th Cir. 1986) (jurisdictional claim and merits intertwined in determining whether defendant was employer under Title VII)). When, as here, both parties submit evidence beyond the pleadings, the motion is properly characterized as one for summary judgment. *Id.*

The court disposed of Mr. Trainor's claims in two rulings. In its first order, the court treated as Apollo employees all those listed on the payroll, including all temporary employees. Under that scenario, Apollo met the fifteen-employee requirement for the requisite number of weeks if Mr. Pilgrim was considered an employee. After ruling that Mr. Pilgrim was not an employee, the court acknowledged Mr. Trainor's challenge to the accuracy of defendants' payroll records and held that he had shown an adequate basis for further investigation. Accordingly, the court granted limited discovery to allow Mr. Trainor to investigate the number of Apollo's employees, both full and part-time.

---

[2](...continued)
determine whether that defendant has an employment relationship with the requisite fifteen employees. Because the inquiry nonetheless is directed to whether the defendant falls within the statute, the question is one of subject matter jurisdiction.

In so doing, the court stated that it had "insufficient evidence to grant summary judgment to Defendants at this early stage." Aplt. App. at 52.

In its second order, the district court agreed with Mr. Trainor that Mrs. Pilgrim, who was also a shareholder in Apollo and worked for the corporation, was an employee each week during the time she worked there, a ruling defendants do not challenge on appeal. However, the court rejected Mr. Trainor's argument that the fifteen-employee requirement had been met for twenty weeks. In reaching this conclusion, the court refused to deem all of Apollo's temporary workers "employees," ruling that Mr. Trainor had failed to controvert defendants' showing that some of these temporary workers were in fact independent contractors. Accordingly, the court granted summary judgment for defendants.

## II

We first address Mr. Trainor's argument that the district court erred in holding he failed to carry his burden of proof under the summary judgment standard. We review the grant of summary judgment *de novo*, taking the facts and the reasonable inferences to be drawn from them in the light most favorable to the nonmoving party. *See Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000). Under Rule 56(c), the moving party bears the initial burden of presenting evidence to show the absence of a genuine issue of material fact. *See Hom v.*

*Squire*, 81 F.3d 969, 973 (10th Cir. 1996). In our circuit, "'[t]he moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment.'" *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991) (quoting *Ewing v. Amoco Oil Co.*, 823 F.2d 1432, 1437 (10th Cir. 1987)). Once this burden is met, Rule 56(e) requires the non-moving party to set forth specific facts showing there is a genuine issue for trial. *See Hom*, 81 F.3d at 973.

Even when, as here, the moving party does not have the ultimate burden of persuasion at trial, it has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial. *Id.* at 1103-04.

> If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything.

*Id.* at 1102-03 (citations omitted); *see also Mullins v. Crowell*, 228 F.3d 1305, 1313-14 (11th Cir. 2000), *reh'g and suggestion for reh'g en banc denied by* 251 F.3d 165 (11th Cir. 2001); *Hunter v. Caliber Syst., Inc.*, 220 F.3d 702, 725-26

(6th Cir. 2000).

Defendants sought to present evidence negating an essential element of Mr. Trainor's case, the requirement that Apollo be an "employer" for ADA purposes. To do so, defendants contended that "at least several" of its temporary workers were independent contractors rather than employees and therefore could not be counted. Aplt. App. at 16. As defendants recognize, in this circuit a person's status as either an employee or an independent contractor is determined using a hybrid test. *See Sizova*, 282 F.3d at 1328.

> Under the hybrid test, the main focus of the court's inquiry is the employer's right to control the "means and manner" of the worker's performance. However, the hybrid test also looks at other factors, including: (1) the kind of occupation at issue, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the employer or the employee furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties. No single factor is conclusive. Rather, the courts are to look at the totality of the circumstances surrounding the working relationship between the parties.

*Id.* (quoting *Lambertsen v. Utah Dep't of Corr.*, 79 F.3d 1024, 1028 (10th Cir. 1996)).

To support their argument that some workers were independent contractors

under the hybrid test, defendants presented two exhibits – payroll records and Mr. Pilgrim's affidavit. The payroll records consisted of four columns listing the payroll check date for each week of the relevant period, the number of full-time Apollo employees for each week, the number of people hired through temporary employment agencies for each week, and the total number of payroll checks issued each week. In his affidavit, Mr. Pilgrim explained his relationship to Apollo, the work he performed for the corporation, and the payroll records. Mr. Pilgrim stated that Apollo occasionally hired temporary workers, including welders, from personnel services. He said that although he assigned work and supervised employees, he did not supervise welders and they provided their own equipment. Defendants' exhibits did not identify the number of welders Apollo hired, or the weeks during which welders worked, or otherwise identify which temporary workers or how many of them defendants contended were independent contractors in any given week. Moreover, under the hybrid test, Mr. Pilgrim's admission that he assigned and supervised the work of all employees other than welders itself creates a fact issue as to whether all the temporary workers were independent contractors rather than employees.

Because Mr. Trainor is the nonmoving party, we must take his factual allegations as true and draw all reasonable inferences from the evidence in his favor. Relying on his personal knowledge of the corporation's operations which

he acquired as Apollo's general manager, Mr. Trainor disputed Mr. Pilgrim's allegations regarding Apollo's hiring practices with respect to temporary employees. According to Mr. Trainor, Apollo treated the employees it hired through personnel agencies in the same way it treated its permanent employees. These workers were interviewed and selected personally by either Mr. Trainor or Mr. Pilgrim. Apollo determined their salary and gave that information to the agency, which added a markup that included half of the employee's social security tax. These workers were under the complete control and supervision of Apollo, and were governed by the same work rules and company policies as were the permanent employees. Mr. Trainor specifically disputed Mr. Pilgrim's assertion that Mr. Pilgrim did not supervise welders, stating to the contrary that "Mr. Pilgrim often personally instructed welders as to how to perform each job." Aplt. App. at 44. According to Mr. Trainor, the temporary workers were not hired by the job but were moved from job to job as the need arose. They were paid by the hour, hired for an unspecified, indefinite period, and some were eventually given permanent status. With respect to welders, Mr. Trainor stated:

> All work performed by temporary employees was performed in buildings owned or provided by Apollo. The statement that welders provided some of their own equipment is true as far as it goes. Welders provided their own toolboxes and helmets, but Apollo provided all the welding equipment and most of the supplies. When welders who were temporary employees were hired as permanent employees, nothing changed with respect to the provision of tools and equipment – permanent employee welders still provided their

own toolboxes and helmets and Apollo still provided the welding equipment and supplies.

*Id.* Based on this evidence, Mr. Trainor argued that summary judgment was improper because a fact issue existed as to whether all of Apollo's temporary workers should be considered employees rather than independent contractors for purposes of satisfying the ADA definition of employer. Alternatively, Mr. Trainor moved for a continuance to permit him further discovery.

In its first ruling, the district court concluded that the parties had provided "insubstantial evidence to support or controvert" whether Apollo's temporary employees should be considered employees or independent contractors. *Id.* at 50. The court also stated that it had "insufficient evidence to grant summary judgment to Defendants at this early stage." *Id.* at 52. It is thus clear that in the court's view, a view with which we agree, defendants had not carried their initial burden to show that no disputed issues of material fact existed, thereby entitling them to judgment as a matter of law. Nonetheless, rather than denying defendants' motion for summary judgment, the district court stayed the motion and granted Mr. Trainor's alternative request for further discovery. Under the summary judgment standards set out above, however, when the moving party fails in its initial burden of production, the nonmoving party has no burden at all and summary judgment should have been denied. While the court's ruling in this regard could be viewed as invited error in light of Mr. Trainor's alternative

motion for further discovery, as we discuss below the court subsequently compounded its error and improperly granted summary judgment.

In its second order, the district court refused to deem all of Apollo's temporary workers "employees" for ADA purposes. In granting summary judgment for defendants, the court held that Mr. Trainor was required to "demonstrate the existence of an employment relationship between employer and an employee <u>for each working day</u> of a specified number of weeks." Aplt. App. at 112 (emphasis in original). The court ultimately held that Mr. Trainor "failed to meet his burden of proof." *Id.* at 113. In response to Mr. Trainor's argument that ADA jurisdiction presented a fact issue that should be submitted to a jury, the court stated "[t]he burden is on an ADA plaintiff to prove that the defendant employed the number of persons needed to trigger application of the ADA." *Id.* at 110. The court apparently believed Mr. Trainor bore this burden on summary judgment because he would be required to bear that burden at trial. In so doing the court erred.

As we have discussed, the moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial. We addressed this issue in *Lake Hefner Open Space Alliance v. Dole*, 871 F.2d 943, 944-45 (10th Cir. 1989). In that case, in response to the defendants' motion for summary judgment, the

-11-

plaintiff rested on its brief and on the administrative record. There, as here, the district court imposed a burden of proof on the plaintiff. We held that the court acted improperly in doing so.

> When a defendant files a motion for summary judgment, he has to show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. The opposing party . . . has no "burden of proof," as such; however, in resisting the motion for summary judgment, [the nonmoving party] may not rely on mere allegations, or denials, contained in its pleadings or briefs. Rather, [the nonmoving party] must set forth specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegations.
> If [the nonmoving party] had filed a motion for summary judgment, it would have had to show that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. And, of course, if this case had gone to trial, [the nonmoving party] would have had the plaintiff's usual "burden of proof." *But in resisting defendants' motion for summary judgment, [the nonmoving party] only has a "burden," if that be the appropriate word, to identify specific facts posing genuine issues of material fact.*

*Id.* at 945 (citations omitted) (emphasis added). Accordingly, we must assess the record to determine whether Mr. Trainor, as the nonmoving party, has shown the presence of a genuine issue of material fact precluding summary judgment. In so doing, we view the evidence in the light most favorable to him and draw all reasonable inferences in his favor.

Summary judgment is not proper if a fact issue exists on whether Apollo's temporary workers were in fact Apollo employees. Mr. Trainor's affidavit, when taken as true, is sufficient to create a fact issue as to whether Apollo's temporary

-12-

employees, including any welders, are employees rather than independent contractors.[3]  Thus even if we were to assume that defendants carried their initial burden on their motion for summary judgment, Mr. Trainor defeated that motion by setting out evidence which, when viewed most favorably to him, created a factual dispute on the critical issue of whether Apollo had fifteen employees for purposes of ADA jurisdiction.  The grant of summary judgment in favor of defendants was therefore improper.

## III

Because the number of Apollo employees will be a material question in dispute on remand, we must also determine whether Mr. Pilgrim may be counted among them for purposes of the ADA.  "In our review of the antidiscrimination laws we must be mindful of their remedial purposes, and liberally interpret their provisions to that end."  *Wheeler v. Hurdman*, 825 F.2d 257, 262 (10th Cir. 1987).  "Such liberal construction is also to be given to the definition of 'employer,'"

---

[3]Mr. Trainor stated that Mr. Pilgrim supervised all aspects of the temporary employees' work, including the work of the welders; that except for the welders' toolboxes and helmets, which both temporary and permanent welders provided for themselves, Apollo supplied the equipment and the facilities; these employees worked for long periods and were paid by the hour rather than by the job; they were governed by the same policies and work rules as the permanent employees; they were an integral part of Apollo's business and their work was a large part of the business operations; Apollo paid at least part of their social security taxes indirectly; and neither temporary nor permanent employees earned retirement benefits at Apollo.

*Owens v. Rush*, 636 F.2d 283, 287 (10th Cir. 1980) (internal quotation omitted), and the term "employee," *see Chavero v. Local 241*, 787 F.2d 1154, 1156 (7th Cir. 1986) (per curiam).[4]  The ADA defines an "employee" as "an individual employed by an employer."  42 U.S.C. § 12111(4).  An "employer," in turn, is defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year."  *Id*. § 12111(5).  The ADA also provides that the term "person" "shall have the same meaning given such term[] in section 2000e [Title VII] of this title."  *Id.* § 12111(7).  Section 2000e defines "person" to include, among others, corporations.  *See* 42 U.S.C. § 2000e(a).

It is undisputed that Mr. Pilgrim and his wife currently own in equal shares all the stock of Apollo,[5] that Mr. Pilgrim performed services for Apollo, and that Apollo paid him a salary for those services.  Mr. Pilgrim was thus both an owner

---

[4] In *Wheeler* the plaintiff brought claims under Title VII, the Age Discrimination in Employment Act, and the Equal Pay Act.  *Wheeler*, 825 F.2d at 258.  In *Owens* and *Chavero* the plaintiff sued under Title VII.  The definition of "employer" set out in the ADA is identical to that contained in Title VII and the other statutes at issue in *Wheeler*.  *Compare* 42 U.S.C. § 12111(5)(A) (ADA) *with* 42 U.S.C. § 2000e(b) (Title VII).  Accordingly, this court has applied cases construing the definition of "employer" in Title VII cases to ADA cases.  *See Butler v. City of Prairie Village*, 172 F.3d 736, 744 (10th Cir. 1999).

[5] Mr. Trainor stated by affidavit that at the time he was employed at Apollo and as late as sometime in 1998 an individual named Genave Rogers owned a third of the company stock.  Aplt. App. at 41-42.  This disputed fact is irrelevant because our resolution of whether Mr. Pilgrim is an employee does not rest on stock ownership.

of Apollo and a participant in a traditional employment relationship with the corporation. The district court held that it would not be appropriate to classify Mr. Pilgrim as "an owner, proprietor, officer, director, manager, and *employee*, despite the fact that he performs some of the duties of an employee." Aplt. App. at 51 (emphasis in original). In so doing, the court relied on four cases that we find distinguishable.

In *State Insurance Fund v. Ace Transportaion Inc.*, 195 F.3d 561, 565 (10th Cir. 1999), a suit to recover unpaid worker's compensation premiums, we observed in passing that Oklahoma's worker's compensation system does not consider truck owner/operators as "employees" subject to worker's compensation premiums. We agree with Mr. Trainor that a truck owner/operator is simply not analogous to the working shareholder of a corporation. Moreover, as Mr. Trainor points out, under Oklahoma worker's compensation law a shareholder-employee of a corporation can elect to be covered by worker's compensation insurance. *See* OKLA. STAT. tit. 85, § 3(8); *see also Bowman v. Sportsworld Dev.*, 837 P.2d 938 (Okla. Ct. App. 1992) (stockholder-employees of corporation may elect to be included in policy).

In *Serapion v. Martinez*, 119 F.3d 982 (1st Cir. 1997), the court concluded that a senior or proprietary partner was not an employee of the partnership. The court undertook a factual analysis to determine whether the person "described as a

partner actually bears a close enough resemblance to an employee to be afforded the protections of Title VII." *Id.* at 987. The court looked at ownership of firm assets and liability for firm debts and obligations, as well as the extent to which compensation is based on the firm's profits, enhanced fringe benefits, and policy-making authority. *See id.* at 990. Even assuming these factors may be relevant to assessing whether a corporate shareholder should also be considered an employee, the differences between a shareholder of a corporation and a partner in a partnership, particularly with respect to liability for the firm's debts and obligations, may well compel a different result when the relevant factors are assessed.

In *Chavero*, 787 F.2d 1154, 1155, the plaintiff brought a Title VII claim against a union local alleging employment discrimination. The court held that the members of the union's executive board of directors were not union "employees" for purposes of Title VII coverage. In so doing, the court concluded that the term "employee" does not include persons "who are no more than directors of a corporation or unpaid, inactive officers." *Id.* at 1156 (internal quotation omitted). Nevertheless, the court took care to point out that a director "may accept duties that make him also an employee," *id.* at 1157 (citing *EEOC v. First Catholic Slovak Ladies Ass'n*, 694 F.2d 1068, 1070 (6th Cir. 1982)), and that "the primary consideration is whether an employer-employee relationship exists," *id*. The court

premised its ruling that the directors in that case were not also employees on a determination that the record failed "to establish that the board members perform[ed] traditional employee duties." *Id.* To the extent that *Chavero* is relevant, therefore, it supports the conclusion that Mr. Pilgrim is an Apollo employee because he performs traditional employee duties as part of an employment relationship.

Finally, in *Matinchek v. John Alden Life Insurance Co.*, 93 F.3d 96 (3d Cir. 1996), the court held that ERISA did not govern an insurance coverage dispute regarding a coverage plan covering only a sole business owner and immediate family members. The court determined that Congress, in defining the terms employer and employee for purposes of ERISA, "did not intend to protect a split-personality business owner whose ego may act as an employee and whose alter-ego may act as an employer threatening to take away his or her own benefits." *Id.* 101 n.2. "*When the employee and the employer are one and the same, there is little need to regulate plan administration.*" *Id.* at 101 (internal quotation omitted) (emphasis in original). The case is irrelevant to determining whether a corporate shareholder who also performs services for the corporation should be considered an employee for purposes of the antidiscrimination laws. In sum, these cases are not persuasive authority for the conclusion that Mr. Pilgrim should not be considered an Apollo employee.

On appeal, defendants rely upon cases holding that a partner in a partnership is not an employee under Title VII, contending there is little difference between a shareholder in a closely held corporation and a partner in a partnership. We disagree. Defendants ignore a hallmark distinction between shareholders and partners, and the differing liability each bears for their entity's debts and obligations. Our circuit has clearly differentiated between partners in a partnership and shareholders in a corporation on this ground, among others. In *Wheeler*, 825 F.2d at 262-76, we dealt at length with the definition of "employee" for Title VII purposes in the context of determining whether a partner should be considered an employee of a partnership. Throughout our discussion we were careful to distinguish between the economic realities of partnerships and those of corporations. We pointed out that while employees do not assume the risks of loss and the liabilities of their employers, partners are liable for partnership debts and obligations. *See id.* at 274-75. We specifically stated that "the characteristics of general partnership are different from that of a small, voting shareholder/director or officer of a large corporation." *Id.* at 276. "There may be many aspects of a partner's work environment in a partnership which are indistinguishable from that of a corporate employee. But in general the total bundle of partnership characteristics sufficiently differentiates between the two to remove general partners from the statutory term 'employee.'" *Id.* In keeping with

our analysis in *Wheeler*, we reject defendants' contention that a corporate shareholder should be treated in the same manner as a partner for purposes of assessing "employee" status under the antidiscrimination laws.

Defendants also ask us to follow those courts holding that shareholders in professional corporations are not employees of the corporation. The circuits are in some disarray on this issue.

> Courts have taken two approaches in resolving the question of whether shareholders and directors of professional corporations are employees under federal antidiscrimination law. Under one approach the type of organization is decisive, and individuals working for a professional corporation are considered employees. The other approach examines the actual circumstances to determine whether an individual functions like a partner. Individuals acting like partners will not be classified as employees because partners own and manage a firm.

*Devine v. Stone, Leyton & Gershman, P.C.*, 100 F.3d 78, 80 (8th Cir. 1996).

Courts that focus on the type of organization reflect that:

> The incorporators of a professional corporation make a deliberate decision to adopt the corporate form for their business in order to avail themselves of important tax, employee benefit, and civil liability advantages. Having freely made the choice to adopt this form of business organization "they should not now be heard" to say that their firm is "essentially a medical partnership," and not a corporation.

*Wells v. Clackamas Gastroenterology Assocs.*, 271 F.3d 903, 905 (9th Cir. 2001) (quoting *Hyland v. New Haven Radiology Assocs., P.C.*, 794 F.2d 793, 798 (2d Cir. 1986)), *cert. granted*, 2002 WL 496771 (Oct. 1, 2002).

-19-

Courts that look to the actual circumstances of the business entity point out that a professional corporation allows doctors, lawyers, and other professionals "to practice their profession as do partners in a partnership while benefitting from certain liability and tax considerations applicable to corporations." *Fountain v. Metcalf, Zima & Co., P.A.*, 925 F.2d 1398, 1399 (11th Cir. 1991). These courts focus on factors indicating that the shareholders function as partners and that their relation to the business entity has the indicia of a partnership relationship. *See id.* at 1401. In so doing, the courts have distinguished between professional corporations and traditional corporations. "The role of a shareholder in a professional corporation is far more analogous to a partner in a partnership than it is to the shareholder of a general corporation." *EEOC v. Dowd & Dowd, Ltd.*, 736 F.2d 1177, 1178 (7th Cir. 1984).

Courts addressing the term "employee" in the context of professional corporations have therefore either given conclusive weight to the choice of corporate form, or have disregarded that form because the entity functioned as a partnership. In view of our determination that partnerships are not analogous to corporations, the treatment by the courts of professional corporations is not helpful to defendants. Indeed the very factors those courts rely on to hold that a professional corporation functions as a partnership are the factors this court cited

in *Wheeler* to distinguish partnerships from corporations.[6]  Given these differences, we are not persuaded cases dealing with professional corporations are an appropriate guide to our present inquiry.

The most helpful authorities in addressing whether Mr. Pilgrim is an employee of Apollo are those dealing with the circumstances in which a corporate officer or director is also a corporate employee.  The Supreme Court has pointed out "[t]here is nothing inherently inconsistent between the coexistence of a proprietary and an employment relationship."  *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 32 (1961); *see also Wheeler*, 825 F.2d at 267 (owners in contexts other than partnerships can also be employees).  Courts have generally applied a three-factor test in making this determination, looking to "(1) whether the director has undertaken traditional employee duties; (2) whether the director was regularly employed by a separate entity; and (3) whether the director reported to someone higher in the hierarchy."  *EEOC v. Johnson & Higgins, Inc.*, 91 F.3d 1529, 1539 (2d Cir. 1996).  "[T]he primary consideration is whether an employer-employee relationship exists" in which the director "perform[s] traditional employee duties."  *Chavero*, 787 F.2d at 1157; *Walters v. Metro. Educ. Enter., Inc.*, 519 U.S. 202, 212 (1997) ("the ultimate touchstone under § 2000e(b) is

_____

[6] In Oklahoma, for example, shareholders in a professional corporation, as opposed to shareholders generally, are personally liable with respect to the rendering of professional services.  *See* OKLA. STAT. tit. 18, § 812.

-21-

whether an employer has employment relationships with 15 or more individuals"); *see also Whitaker House Coop.*, 366 U.S. at 32 (members in cooperative are also employees when cooperative provided opportunity to work and paid for it); *Graves v. Women's Prof. Rodeo Ass'n,* 907 F.2d 71, 72-73 (8th Cir. 1990) (members of corporation not employees because they did not receive compensation for services and therefore did not have employment relationship with corporation); *Zimmerman v. N. Am. Signal Co.*, 704 F.2d 347, 351-52 (7th Cir. 1983) (corporate officers who were paid for their services and worked for corporation deemed employees, while officers who were unpaid and took no role in corporate daily affairs were not considered employees), *overruled on other grounds by Walters v. Metro. Educ. Enter., Inc.*, 519 U.S. 202 (1997); *EEOC v. First Catholic Slovak Ladies Ass'n*, 694 F.2d 1068, 1070 (6th Cir. 1982) (association directors were also employees when they performed traditional employee duties and drew salaries).

In this case, when the facts viewed most favorably to Mr. Trainor are assessed under the above three factors, it is clear defendants have failed to establish as a matter of law that Mr. Pilgrim is not an employee of Apollo for purposes of subject matter jurisdiction under the ADA. Mr. Pilgrim's own evidence establishes that he had an employment relationship with the corporation in which he performed services for it and was paid for those services. There is no

-22-

evidence in the record tending to show that he was regularly employed by any other entity. While it may be true that Mr. Pilgrim did not answer to anyone but himself in performing his services for Apollo, we do not think this factor is dispositive in light of the undisputed evidence of his employment relationship with the company. Accordingly, the district court erred in holding as a matter of law that Mr. Pilgrim was not an employee of Apollo.

We **REVERSE** the grant of summary judgment in favor of defendants and **REMAND** for further proceedings in light of this opinion.[7]

---

[7] Upon granting defendants' motion for summary judgment on the federal ADA claim, the district court declined to exercise supplemental jurisdiction over the state law claims and dismissed them without prejudice. Our reversal of summary judgment on the federal claim reestablishes federal question jurisdiction and a jurisdictional basis may therefore exist to support supplemental jurisdiction. *See Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1550 (10th Cir. 1996). Accordingly, dismissal of the state law claims is reversed and remanded for further consideration in light of *Olcott*.