**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 24, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DENNIS MICHAEL BLAY,

        Plaintiff-Appellant,

v.

JOHN REILLY, Head Supervisor
JVP Industries; RICHARD GRAHAM,
Supervisor JVP; CHARLIE
PELLITIER, Supervisor JVP,

        Defendants-Appellees.

No. 04-1347
(D.C. No. 01-RB-1917 (MJW))
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

Dennis Michael Blay, a prisoner at the Limon Correctional Facility (LCF)

in Limon, Colorado, worked in the LCF graphics design shop fabricating signs

from various materials. He alleges that the defendants, his supervisors at the

design shop, violated his Eighth Amendment right to be free from cruel and

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

unusual punishment by failing to provide the ventilation and tools necessary for him to work safely.  Seeking legal recourse, Mr. Blay sued defendants in federal district court under 42 U.S.C. § 1983.  The district court, adopting the report and recommendation of the magistrate judge assigned to the case, granted defendants summary judgment.  On appeal, Mr. Blay asks this court to reverse the district court's ruling.  He asserts that (1) the record shows genuine issues of fact material to his § 1983 claims, and (2) the district court erred in denying him a six-month extension of time to file his response to defendants' summary judgment motion.

Because we agree that the existence of genuine issues of material fact preclude summary judgment, we REVERSE the district court's grant of summary judgment and REMAND for further proceedings.

## I.

This appeal has been before us previously.  At that time, we vacated the district court's judgment and remanded the case to the district court, directing it to dismiss Mr. Blay's claims without prejudice because Mr. Blay had not demonstrated the exhaustion of his administrative remedies required by 42 U.S.C. § 1997e(a).  *See Blay v. Reilly*, 152 F. App'x 747, 749 (10th Cir. 2005) (unpublished), *vacated*, 127 S. Ct. 1213 (2007).  Our decision was mandated by this court's precedent at that time.  *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1209-10 (10th Cir. 2003) (holding that § 1997e(a) imposed upon the

-2-

prisoner a mandatory and unwaivable pleading requirement), *abrogated by Jones v. Bock*, 127 S. Ct. 910 (2007) (holding that failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) is an affirmative defense, not a pleading requirement).  On November 23, 2005, the district court complied with the mandate of this court and entered judgment dismissing Mr. Blay's claims without prejudice.

On February 20, 2007, the Supreme Court granted *certiorari* in this case and vacated our judgment, remanding the case to us for further consideration in light of its ruling in *Jones v. Bock*.  Accordingly, we have recalled our mandate to the district court and now proceed to the merits of the appeal, exercising jurisdiction under 28 U.S.C. § 1291.

II.

Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  Under the pertinent part of 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in

an action at law." Mr. Blay claims that defendants failed to take reasonable measures to guarantee his safety–and therefore violated both the Eighth Amendment and § 1983–by failing to provide him the ventilation and tools necessary to work safely, despite his many requests for the same.

Mr. Blay claims that his job required him to use various tools–including industrial saws, a sander, and a sprayer–to cut wooden signs to the correct size and shape and then use various chemicals–including paints, primers, and mineral spirits–to apply whatever finishing coating was necessary. He claims that the room in which he worked did not have adequate ventilation to properly disperse the large amounts of hazardous fumes and dust produced during the fabrication process, and that exposure to the fumes and dust caused him various injuries.

Mr. Blay also claims he was required to remove the vinyl coating from metal sign "blanks." R., Doc. 102 at 11. He claims that removing the vinyl required that he precariously balance the sign blanks on two saw horses and then use considerable force in scraping them with a razor blade tool. He alleges that this was an inherently and unavoidably dangerous arrangement because the razor blade at times unexpectedly caught on, and then uncontrollably slipped free from, the vinyl and eventually resulted in his finger being cut.

To prove his claims, Mr. Blay must show (1) that the inadequate ventilation and tools each posed a substantial risk of serious harm to him, and (2) that defendants' refusal to alleviate these risks constituted "deliberate indifference" to

them.  *Farmer*, 511 U.S. at 834 (internal quotation marks omitted).  Said another way,

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id*. at 837.

Defendants moved for summary judgment on Mr. Blay's claims.  In so moving, they had "both the initial burden of production on [their motion] and the burden of establishing that summary judgment is appropriate as a matter of law." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).  To carry their initial burden of production, they had to either produce "affirmative evidence negating an essential element of [Mr. Blay's] claim" or show that Mr. Blay "[did] not have enough evidence to carry [his] burden of persuasion at trial."  *Id*.  Defendants sought to show that they were not deliberately indifferent to the alleged risks to Mr. Blay's safety.

To do this, defendants relied mainly on their own affidavits.  Mr. Reilly averred that the graphics design shop was only four years old and was designed to be a sign shop, "which includes the implementation of an adequate ventilation system."  R., Doc. 77, Ex. A at 2.  Mr. Reilly further averred that "the health department conducts yearly inspection tours of the building" and that in response

to health inspector recommendations, the prison had added more vents, upgraded one of the ventilation fans in "the washout room," and purchased a dozen respirators for use in the shop. *Id*. Mr. Graham averred in his affidavit that he was "aware that both the health department and the American Correctional Association conduct inspections to insure that the shop meets all specifications and industry standards." *Id*., Ex. C at 2. He also averred that "[t]he [g]raphics design shop was well-ventilated with two (2) industrial fans and two (2) wall-mounted fans for the benefit of all inmate employees and supervising guards. In addition, particle/dust masks were available to Inmate Blay when he worked in the Graphics Design Shop." *Id*. As to the injury Mr. Blay sustained on his finger, Mr. Graham averred that the accident was addressed at a subsequent safety meeting but that "there did not appear to be any further safety measures that could have been implemented to avoid [that] type of accident." *Id*., Ex. C at 3.

Mr. Blay filed a verified response to defendants' motion for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (holding that if the moving party carries its initial burden on summary judgment, the nonmoving party must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial). As to his inadequate ventilation claim, he averred that the room where he worked was not equipped with its own ventilation system; that "the small ceiling ducts that supplied air to the Prep room had virtually no effect[] on the high-concentrations of chemical fumes or

high-concentrations of . . . dust, and particulates," R., Doc. 102 at 16; and that the room's industrial fan "did not draw fresh air into or exhaust air out of the Prep Room," *id*. at 6. He further averred that the shop's general ventilation system was not sufficient because he was ordered to keep the prep room door closed to avoid contaminating the work product of prisoners in the "open area" of the shop. *Id*. at 16. Mr. Blay averred that the respirators and masks available to him did not properly conform to his face, clogged so easily as to make breathing difficult, did not protect against chemical fumes, and could not be worn in conjunction with safety glasses. Mr. Blay averred that the fumes and dust caused him daily nausea; chronic headaches; blurred vision; coughing; sneezing; blood, dust, and particulates in his nasal mucus; dust and particulates in his phlegm; chest pains; and difficulty breathing. *Id*. at 2. He averred that he "complained numerous times that the lack of ventilation and dust collection was making him sick." *Id*. at 3.

As to his inadequate tool claim, Mr. Blay averred:

The Graphics Design Shop ("the Shop") provided only rudimentary tools and equipment to work on sign blanks. Instead of a work table Blay was provided with two wooden "saw horses" upon which he had to place the metal sign blank. A chemical solvent was poured onto the blank, spread out, and allowed to soak in to hasten removal of the vinyl that was adhered to the blank. Next, he would apply considerable dow[nwa]rd force with the left hand while simultaneously pressing it against his body to keep it from moving. Since [the] vinyl was extremely tough and stubbornly adhered to the blank he had to use considerable force to scrape the vinyl off bit-by-bit. The awkward position and considerable force he applied

-7-

caused many close calls, regardless of how much caution he exercised, when removing the vinyl.

*Id.* at 11. Mr. Blay also averred that because of several close calls where he barely avoided cutting himself he made numerous requests to defendants for a work table upon which to clamp the blanks and a "stripper wheel"[1] to assist in removing the vinyl, explaining why such tools were needed to do the job safely. He also averred that defendants had enough experience working in the shop that the danger should have been obvious to them, but that "[s]ometime after making each request either Graham or Pelletier would relate to Blay that Reilly had not approved the purchase." *Id.* at 11-12. Mr. Blay eventually cut his left index finger with the razor blade, allegedly causing some permanent loss of sensation.

The magistrate judge recommended granting summary judgment, holding that

> [w]hile [Mr. Blay] allegedly expressed his concerns to the defendants about the shop's ventilation, the tools he was provided, and the manner in which his specific job was set up, and he allegedly even presented to the defendants his own detailed suggestions for improvement, it cannot reasonably be found, based merely upon [Mr. Blay's] layman's opinions, that the experienced defendants were aware of an excessive risk to [Mr. Blay's] health and safety and/or that they responded unreasonably to the risk.

---

[1] Mr. Blay described a "stripper wheel" as a wheel attached to an electric drill "allow[ing] the user to remove rust, paint, etc., from a variety of surfaces efficiently and effortlessly." R., Doc. 102 at 14.

R., Doc. 110 at 15. The district court adopted the magistrate judge's report and recommendation and granted summary judgment and Mr. Blay appealed.

We review a summary judgment order de novo, considering the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000). Rule 56(c) of the Federal Rules of Civil Procedure states that a party is entitled to summary judgment in his or her favor "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Said another way, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). In reviewing summary judgment, we keep in mind that "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

We disagree with the district court's determination that a reasonable fact-finder could not find "based merely upon [Mr. Blay's] layman's opinions, that the experienced defendants were aware of an excessive risk to [Mr. Blay's] health and safety and/or that they responded unreasonably to the risk." R., Doc. 110 at 15. Viewing the record in the light most favorable to Mr. Blay as we must, it is clear that defendants did not respond to the risks complained of by Mr. Blay. A reasonable fact-finder could also find that defendants were aware of an excessive risk to Mr. Blay's health and safety.[2] In the light most favorable to Mr. Blay, the defendants knew that despite the alleged adequacy of the ventilation in the shop as a whole and the regular safety inspections, Mr. Blay's specific job in the enclosed and poorly ventilated prep room was causing him serious respiratory distress and other physical problems. They also knew that, with the tools available to him, Mr. Blay had almost cut himself a number of times because he could not avoid instances where the razor blade would catch and then slip loose uncontrollably. Consequently, we cannot say that "the record taken as

---

[2]     We do note that Mr. Pelletier and Mr. Graham both averred that Mr. Blay never complained to them about inadequate ventilation or tools while employed at the shop. Although–being careful to assiduously avoid any stark departure from the summary judgment standard mandated by the Federal Rules of Civil Procedure, *cf. Erickson v. Pardus*, 127 S. Ct. 2197, 2198 (2007)–we must take as true Mr. Blay's claim that he did in fact complain to defendants about the alleged risks to his health, we intend no comment on the merit of any possible future summary judgment motion based on a failure to exhaust administrative remedies or any other not previously pursued affirmative defense.

a whole could not lead a rational trier of fact to find for" Mr. Blay on his claims. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

Consequently, we must reverse the district court's grant of summary judgment. Since we hold that Mr. Blay presented sufficient specific facts in his verified response to defeat defendants' summary judgment motion, we need not address his second point alleging that the district court erred in not granting him a six-month extension of time in which to file that response.

III.

We VACATE the district court's November 23, 2005, judgment that was entered in accordance with our now-withdrawn mandate. The district court's original July 22, 2004, judgment is REVERSED and the case is REMANDED for further proceedings. Mr. Blay's motion to supplement the record, previously denied as moot, is again DENIED.[3]

Entered for the Court

Stephen H. Anderson
Circuit Judge

---

[3] Our previous grant of Mr. Blay's motion to proceed on appeal without prepayment of fees remains in effect as a matter of course.