**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**December 31, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

PHELPS OIL AND GAS, LLC, on behalf
of itself and a class of similarly situated
royalty owners,

     Plaintiff - Appellant,

v.

NOBLE ENERGY, INC.,

     Defendant - Appellee.

No. 24-1005

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:22-CV-02637-RM-SKC)**
_____

George A. Barton (Stacy A. Burrows with him on the briefs), Barton and Burrows LLC,
Mission, Kansas, for Plaintiff - Appellant.

Jonathan W. Rauchway (James R. Henderson and Molly J. Kokesh with him on the
brief), Davis Graham & Stubbs LLP, Denver, Colorado, for Defendant - Appellee.
_____

Before **MATHESON**, **MORITZ**, and **FEDERICO**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

     Noble Energy, Inc., produces natural gas from land it leases from Phelps Oil

and Gas, LLC, and pays royalties on proceeds from gas sales to Phelps.  Phelps

brought a putative class action against Noble for breach of contract, alleging Noble underpaid royalties. The district court granted Noble summary judgment, and Phelps timely appealed. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

### A. *Factual History*

#### 1. **Parties and Main Actors**

Noble produces natural gas and natural gas liquids ("NGLs") from leased land in Colorado. DCP Midstream, LP ("DCP"), processes Noble's gas and NGLs, provides other post-wellhead services, and sells the processed gas and NGLs. It retains a share of the sales proceeds and pays Noble the rest. As explained below, Noble pays Phelps royalties under a settlement formula from a prior class action lawsuit—"the *Holman* Settlement."

#### 2. *Holman* **Settlement**

In the *Holman* Settlement, the parties agreed to a royalty calculation method, which became effective on January 1, 2008. Under that method, Noble agreed to pay Phelps and other class members royalties on (1) 100 percent of proceeds Noble received from gas and NGL sales and (2) 50 percent of proceeds retained by providers of post-wellhead services, including DCP.

The 50 percent royalty provision reads:

> When any provider of Post-Wellhead Services retains a percentage of the provider's sale proceeds as compensation for Post-Wellhead Services and returns a percentage of the provider's sale proceeds to Noble, then Noble will, in addition to paying [100 percent] Royalties on the sale

2

proceeds returned to Noble, also pay Royalties on 50% of the amount of sale proceeds retained by the provider of such Post-Wellhead Services.

App., Vol. 4 at 855-56 (provision 6(a)(ii)).

3. **DCP Settlement**

From 2008 to 2009, Noble conducted an audit of DCP. In the audit report, Noble asserted that DCP had underpaid it by about $34 million, but DCP disagreed. After negotiations, Noble and DCP settled the dispute ("the DCP Settlement"). Under the DCP Settlement, Noble agreed to release its underpayment claims. In exchange, DCP agreed to invest $17.5 million to improve its own gas processing and transportation infrastructure.

## B. *Procedural History*

Phelps sued Noble and DCP in Colorado state court,[1] alleging Noble breached the *Holman* Settlement by failing to pay royalties on (1) 50 percent of the $34 million from the DCP audit, and (2) 100 percent of the $17.5 million that DCP promised to invest.[2] DCP removed the case to the United States District Court for the District of Colorado. It was assigned to Judge Robert E. Blackburn.

---

[1] DCP is not a party to this appeal.

[2] Phelps has waived any argument that Noble owed 100 percent royalties on the $34 million or 50 percent royalties on the $17.5 million because it does not raise these issues on appeal.

3

1. **2017 Summary Judgment Order**

Phelps and Noble filed cross-motions for summary judgment on the breach of contract claims. Analyzing the *Holman* Settlement, Judge Blackburn recognized "two key prerequisites" to Noble's 50 percent and 100 percent royalty obligations: "(1) production of natural gas or liquids at the relevant wells; and (2) return of sale proceeds to Noble by the post-wellhead service provider, DCP." App., Vol. 4 at 970.

a. *$34 million claim*

On the $34 million claim, Judge Blackburn held that "the second prerequisite"—return of sales proceeds—"never was satisfied" because "DCP never paid Noble the 34 million dollars claimed by Noble in the DCP Audit." *Id.* at 972; *see also id.* at 977. He therefore concluded that "Noble's obligation to pay a royalty on this amount never was triggered" and granted Noble summary judgment on the $34 million claim. *Id.* at 977; *see also id.* at 970-71.

b. *$17.5 million claim*

On the $17.5 million claim, Judge Blackburn started his analysis with *Watts v. Atlantic Richfield Co.*, 115 F.3d 785 (10th Cir. 1997). He said *Watts* held that gas producers must pay royalties on "'any settlement in which a producer receives consideration for compromising its pricing claim' assuming the pricing claim 'relates to either past or future production actually taken by the settling purchaser.'" App., Vol. 4 at 974 (quoting *Watts*, 115 F.3d at 791). He found that DCP's promise to invest $17.5 million in its infrastructure was consideration Noble received for settling its pricing dispute on past production, so the promise was "subject to the rule in

4

*Watts.*" *Id.* at 975.  He therefore granted Phelps summary judgment "as to the contention . . . that DCP's promise to invest 17.5 million dollars . . . may be asserted as the basis for a royalty claim under the Holman Settlement." *Id.* at 982.

Judge Blackburn next noted that although "Phelps may be entitled to a royalty payment from Noble" based on the $17.5 million promise, "[t]he evidence in the record d[id] not show what value, if any, this consideration had for Noble." *Id.* at 975.  He held that "[a]ny royalty calculation cannot be based on the amount DCP promised to spend because that amount does not necessarily reflect the value, from Noble's perspective, of this consideration." *Id.*

Judge Blackburn said that "increased sales revenue [resulting from DCP's infrastructure investment] would mean . . . higher royalty payments from Noble to Phelps," and noted that Phelps did not allege Noble had failed to make any of those payments. *Id.*  He therefore posited "the key question is whether DCP's promise to invest 17.5 million dollars in infrastructure . . . gave any additional value to Noble as consideration for the settlement of alleged past price deficiencies." *Id.* at 975-76.  Judge Blackburn denied summary judgment on this question because the record was insufficient to settle this issue.

2. **2018 Clarifying Order**

Phelps moved to amend or clarify Judge Blackburn's 2017 summary judgment on the $34 million claim.  It argued Noble's 50 percent royalty obligation "[wa]s dependent on the amount of sale proceeds actually retained by DCP," not on the amount DCP returned to Noble.  App., Vol. 1 at 128.

In response, Judge Blackburn said only Phelps's $17.5 million remained to be resolved. For Phelps to succeed on that claim, he said it needed to prove "(1) DCP's promise to spend 17.5 million dollars . . . had value to Noble, independent of increased future production and sales revenue after [the parties entered the DCP Settlement], and (2) that value was given to Noble by DCP as a compromise of Noble's pricing claim for production prior to [the Settlement]." App., Vol. 4 at 990.

### 3. 2019 Summary Judgment Order

After supplemental discovery, Noble again moved for summary judgment on Phelps's $17.5 million claim.

Judge Blackburn granted Noble's motion because Phelps failed to show that DCP's $17.5 million promise "had value to Noble independent of increased production and resulting revenue." *Id.* at 1005. He also rejected Phelps's attempt to "reassert" its claim for royalties on the $34 million, "which was dismissed previously." *Id.*

### 4. Remand, Removal, and Reassignment

On appeal, we concluded that the district court lacked subject matter jurisdiction. Judge Blackburn then vacated his dispositive rulings and remanded the case to the state court.[3] When DCP removed the case again, it was reassigned from

---

[3] Phelps originally sued Noble in Colorado state court, and DCP removed the case to federal court based on diversity jurisdiction. Phelps moved to remand for lack of subject matter jurisdiction, which Judge Blackburn denied.

Phelps later appealed both Judge Blackburn's denial of its remand motion and his 2019 summary judgment order. *Phelps Oil & Gas, LLC v. Noble Energy Inc.*,

Judge Blackburn to Judge Raymond P. Moore.[4]  Noble moved to re-enter

Judge Blackburn's dispositive orders.

Judge Moore directed the clerk to refile the parties' dispositive motions.  He

noted that he "discern[ed] no reason why the Court's previously vacated final

judgment and orders could not be re-entered in [Noble's] favor now that the

jurisdictional issue . . . has been resolved," but he permitted the parties to file

supplemental briefing before reinstating them.  App., Vol. 1 at 125.

5. **2023 Summary Judgment Order**

After supplemental briefing, Judge Moore addressed Phelps's "limited

objections" to Judge Blackburn's summary judgment orders and adopted the previous

rulings on Phelps's $34 million and $17.5 million claims.

a.  *$34 million claim*

Phelps argued that Judge Blackburn failed to consider its "substantial" and

"extensive" evidence showing that Noble breached the 50 percent obligation for its

$34 million claim.  App., Vol. 2 at 456-57.  Judge Moore disagreed.  He found that

Phelps "d[id] not describe or explain what evidence create[d] a genuine issue of

material fact" besides the DCP audit, which "was merely a bargaining position

---

5 F.4th 1122, 1125-26 (10th Cir. 2021).  We reversed the remand order and dismissed for lack of subject matter jurisdiction.  *Id.* at 1129.  We did not reach Phelps's appeal of the 2019 summary judgment order.  *Id.*

[4] DCP asserted subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  Phelps again moved to remand, which Judge Moore denied. Phelps appealed, and we affirmed.  *Phelps Oil & Gas, LLC v. Noble Energy Inc.*, No. 23-1243, 2023 WL 6121016, at *4 (10th Cir. Sept. 19, 2023) (unpublished).

adopted by Noble" and thus "Noble was not contractually obligated to pay royalties based on this amount." *Id.* at 456.

b. *$17.5 million claim*

Phelps argued that Judge Blackburn misapplied *Watts* when analyzing its $17.5 million claim. Judge Moore agreed with Judge Blackburn's analysis under *Watts* that Phelps had not shown that the $17.5 million promise "would provide any additional benefit to Noble aside from increased production and resulting revenues" and that Noble was therefore entitled to summary judgment on this claim. *Id.* at 458.

Judge Moore adopted Judge Blackburn's dispositive rulings and entered final judgment. Phelps timely appealed.

## II.  DISCUSSION

"We review de novo a grant of summary judgment and apply the same standard as the district court." *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1213 (10th Cir. 2022). We will affirm a grant of summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We apply Colorado substantive law to our analysis. The *Holman* Settlement and the DCP Settlement both contain Colorado choice of law provisions, and neither party disputes that Colorado law applies. *See, e.g.*, *Mountain States Adjustment v. Cooke*, 412 P.3d 819, 824 (Colo. Ct. App. 2016) (enforcing an unambiguous choice of law provision).

### A. *$34 Million Claim*

Phelps argues we should reverse summary judgment on its claim for 50 percent royalties on the $34 million from the DCP audit because (1) the audit alleged that DCP wrongfully retained $34 million and (2) Judge Blackburn ignored "extensive evidence."  Aplt. Br. at 38-39.  We disagree.

First, Phelps argues that "the 50 percent obligation is dependent solely upon 'the amount of sale proceeds retained'" by DCP, not whether DCP returned any proceeds to Noble.  *Id.* at 38 (quoting App., Vol. 3 at 721-22).  But Phelps misconstrues the *Holman* Settlement, which requires Noble to pay royalties when two conditions precedent are met:  "[1] any provider of Post-Wellhead Services retains a percentage of the provider's sale proceeds . . . *and* [2] *returns* a percentage of the provider's sale proceeds to Noble."  App., Vol. 4 at 855 (emphasis added).  Phelps does not present evidence or argument that DCP returned any proceeds to Noble that were associated with the alleged $34 million underpayment.  Phelps's argument therefore fails.

Second, Phelps argues Judge Blackburn failed to "reference or consider any part of the extensive evidence which Phelps submitted" when ruling on its claim. Aplt. Br. at 38-39.  We find no error.  Phelps raised this same argument to Judge Moore, who dismissed it because Phelps "d[id] not describe or explain what evidence creates a genuine issue" apart from the DCP audit.  App., Vol. 2 at 456; *see also id.* at 457.  On appeal, Phelps does not argue it adequately presented to Judge Moore what evidence created a genuine issue, and it has not remedied that deficiency here.

9

*See* Aplt. Br. at 38-39.  Phelps therefore has failed to carry its burden "to set forth specific facts showing there is a genuine issue for trial."  *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002), *as amended on denial of reh'g* (Jan. 23, 2003).

## B.  *$17.5 Million Claim*

Phelps's $17.5 million claim turns on a proper understanding and application of *Watts*, 115 F.3d at 785.

### 1.  **Legal Background**

#### a.  Watts

In *Watts*, a lessee agreed to pay lessors royalties "on the proceeds from the sale of gas produced" from the lessors' Oklahoma oil field.  115 F.3d at 791.  The lessee sold the gas it produced to a buyer under a long-term purchase agreement. *Id.* at 788.  When the buyer refused to purchase the gas, the lessee sued the buyer for breach of contract.  *Id.*  During settlement negotiations, the lessee and the buyer "became involved in a separate dispute" involving gas purchases from an unrelated oil field in a different state.  *Id.*  The lessee agreed to settle both disputes.  *Id.* at 789. In exchange, the lessee received (1) monetary consideration for gas produced and sold from the two oil fields and (2) nonmonetary consideration—a new gas gathering system in the Oklahoma field and the buyer's agreement to enter a gas transportation contract for gas from the Oklahoma field.  *Id.*

After the settlement, the lessee paid the lessors royalties on the monetary consideration for gas produced and sold from the Oklahoma field, but did not pay

10

royalties on the nonmonetary consideration. *Id.* The lessors sued the lessee for breach of its contractual duty to pay royalties under Oklahoma law, and the district court granted the lessee summary judgment. *Id.*

On appeal, we explained that when a lessee must pay royalties on gas proceeds, "whatever settlement consideration the lessee receives" from a buyer "is a component of the true price paid for the gas" and therefore "subject to the lessors' royalty interest." *Id.* at 793. We thus concluded that "[t]he important factor triggering the duty to pay royalties is . . . an agreement by the producer to compromise its right to pursue a higher price in exchange for" consideration, whether monetary or nonmonetary. *Id.* We reversed the district court's grant of summary judgment, finding a dispute of material fact about whether the nonmonetary settlement consideration was attributable to the buyer's agreement to compromise its Oklahoma pricing claim. *Id.* at 794.

b. Westerman

In *Westerman v. Rogers*, 1 P.3d 228 (Colo. Ct. App. 1999), a lessee similarly agreed to pay lessors royalties on the production and sale of natural gas extracted from their land. *Id.* at 229. The lessee alleged that its buyer breached their purchase agreements. The lessee settled its claims in exchange for payment. *Id.* The lessors demanded royalties on the entire settlement amount the lessee received. *Id.* at 229-30. Applying Colorado law, the Colorado Court of Appeals "adopt[ed]" *Watts*'s analysis and "similarly conclude[d] that royalty interests extend to any settlement or payment in which a producer receives consideration for compromising

11

its pricing claim, but only to the extent that the claim relates either to past or future production actually taken by the settling purchaser." *Id.* at 233.

## 2.  **Application**

Phelps argues Noble breached the *Holman* Settlement because it failed to pay all royalties due on DCP's $17.5 million promise to invest in its own infrastructure. Aplt. Br. at 31-32.  Again, we disagree.

Noble does not contest that DCP's promise was royalty-bearing under *Watts* and *Westerman*.  *See* Aplee. Br. at 20, 24-25.  Like the lessees in those cases, Noble pays royalties on the proceeds from the sale of gas.  In the audit, Noble disputed whether DCP paid it all the proceeds owed.  Under *Watts* and *Westerman*, the DCP Settlement was royalty bearing because Noble "compromise[d] its right to pursue a higher price" under the contract "in exchange for" consideration—the $17.5 million promise.  *Watts*, 115 F.3d at 793.

The issue on appeal is what royalties were due under the royalty-bearing DCP Settlement.  Based on *Watts* and *Westerman*, royalties were due on "whatever settlement consideration the *lessee receives*."  *Watts*, 115 F.3d at 793 (emphasis added); *see Westerman*, 1 P.3d at 233 (adopting *Watts*).  This turns on the value of the consideration to Noble as the lessee—not to DCP as the gas purchaser.

Phelps admits, and our review of the record confirms, it cannot show that Noble received any value from DCP's $17.5 million promise beyond increased gas

and NGL production. Oral Arg. at 13:36-14:37.[5] Under *Watts* and *Westerman*, Phelps can establish only that Noble must pay royalties on increased gas and NGL production, and Phelps admits Noble has done so. App., Vol. 4 at 975. Phelps therefore fails to create a genuine issue of fact regarding Noble's obligation to pay any additional royalties.

## III. CONCLUSION

We affirm the district court's judgment.

---

[5] *See also* Aplt. Br. at 31-37 (disputing the district court's analysis under *Watts* and *Westerman* but not disputing the court's finding that Phelps failed to show that Noble received any value from DCP's $17.5 million promise beyond increased gas and NGL production).

13