FILED
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**April 30, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

DE ANZA ANGEL DIMAS,

    Plaintiff - Appellant,

v.

PECOS INDEPENDENT SCHOOL
DISTRICT BOARD OF EDUCATION;
PECOS HIGH SCHOOL; MICHAEL
FLORES, in his individual capacity; FRED
TRUJILLO, Superintendent, in his
individual and official capacities,

    Defendants - Appellees.

No. 23-2064
(D.C. No. 1:21-CV-00978-KWR-JFR)
(D.N.M.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **HARTZ**, **McHUGH**, and **FEDERICO**, Circuit Judges.
_____

De Anza Angel Dimas was a member of the Pecos High School girls'

basketball team. One day, she sat next to her girlfriend while taking a school bus to a

basketball tournament. The school's athletic coordinator, Michael Flores, approached

Ms. Dimas and her girlfriend, and said they could not sit together because the school

district had an unwritten policy against students in romantic relationships sitting on

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and
Tenth Circuit Rule 32.1.

the same bus seat during athletic trips ("the Unwritten Policy" or "the Policy").

Ms. Dimas changed seats and participated in the tournament.

Ms. Dimas believed that she was targeted for being in a same-sex relationship

and that had she been in an opposite-sex relationship, the Unwritten Policy would not

have been enforced. Accordingly, she sued Pecos High School; Pecos Independent

School District Board of Education ("PISD"); Mr. Flores; and Fred Trujillo, the PISD

superintendent (collectively, "Defendants"). She asserted state law claims and claims

for violations of the United States Constitution under 42 U.S.C. § 1983. Mr. Flores

and Mr. Trujillo asserted a qualified immunity defense, so the district court stayed

discovery pending resolution of the defense. The district court later granted summary

judgment in Defendants' favor on all claims, and Ms. Dimas appealed. We affirm.

## I.     BACKGROUND

### A.     *Factual History*

A court may not grant summary judgment if there are genuine disputes of

material fact. Fed. R. Civ. P. 56(a). Facts are material if they could affect "the

outcome of the lawsuit." *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th

Cir. 2014) (quotation marks omitted). Factual disputes are "genuine if a rational jury

could find in favor of the nonmoving party on the evidence presented." *Id.* (quotation

marks omitted). If a party asserts "that a fact cannot be or is genuinely disputed," that

party "must support [its] assertion by" (1) "citing to particular parts of materials in

the record," (2) "showing that the materials cited do not establish the absence or

2

presence of a genuine dispute," or (3) showing that the "adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

We first outline the undisputed material facts and then address Ms. Dimas's proposed genuinely disputed material facts.

## 1.    Undisputed Material Facts

Ms. Dimas and her girlfriend were members of the Pecos High School girls' basketball team. On January 4, 2019, the basketball team was on a bus preparing to travel to a nearby tournament. Ms. Dimas and her girlfriend were sitting together on a bus seat.

Also on the bus were Mr. Flores, the athletic coordinator; Jessica Flores, the cheerleading coach;[1] and Mathew Stout, the assistant basketball coach. Before the bus left, Mr. Flores noticed Ms. Dimas and her girlfriend sitting together. Mr. Flores knew the two students were dating. At this time, the school district's Unwritten Policy prohibited all students who were in romantic relationships from sitting on the same bus seat during athletic trips. The purpose of the Unwritten Policy was "to allow 'proper supervision' of students and 'minimize any inappropriate conduct [between students] on school athletic trips.'" App. Vol. III at 612 (alteration in original). Aware of the Policy, Mr. Flores approached Ms. Dimas and her girlfriend and said, "I need to see you two—come with me." *Id.* at 612–13. Mr. Flores led the two students to the school gym, along with Ms. Flores and Mr. Stout.

_____

[1] A Joint Status Report indicates Michael Flores and Jessica Flores are married.

Inside the gym, Mr. Flores began questioning Ms. Dimas and her girlfriend. He recorded the conversation, which lasted approximately forty seconds. Mr. Flores first asked whether Ms. Dimas and her girlfriend were a couple, and one of the students answered "Yes."[2] *Id.* at 613. Mr. Flores asked the two students "whether it was appropriate for [them] to sit together on the bus." *Id.* The students did not answer this question.[3] Mr. Flores then stated, "[W]e would have to [do this] with anybody else, so you guys cannot sit together on the bus." *Id.* (second alteration in original). After making this statement, Mr. Flores asked for acknowledgment, and Ms. Dimas said, "[O]kay." *Id.* Mr. Flores assured the students they were "not in trouble" but again told them they could not sit together. *Id.* He said, "[W]e wouldn't allow it any other way, so you guys can't do it either." *Id.* Ms. Dimas replied, "[O]kay." *Id.* After this conversation, the group headed back to the bus. The entire team—including Ms. Dimas—traveled to and participated in the tournament.

Ms. Dimas wrote an undated letter about the bus incident. The letter is addressed "To Whom It May Concern," so it is unclear who received it. *Id.* at 614. In the letter, Ms. Dimas described the incident from her perspective. She wrote that she

---

[2] The district court noted that it was unclear who made this statement. For this appeal, it is immaterial who answered the question.

[3] Defendants state that according to Mr. Flores, the students responded "no" when asked if it was appropriate for them to sit together. Appellees' Br. at 8. However, the district court reviewed the recording of the conversation and concluded the students did not answer the question. Because this fact is immaterial, we defer to the district court's finding.

felt "threatened because of [her] sexual orientation." *Id.* (alteration in original). She also described the incident as discriminatory "because boys and girls from different teams can walk around and hold hands and nothing is said about it." *Id.*

On January 9, 2019, Mr. Trujillo, the PISD superintendent, responded to Ms. Dimas's letter. Mr. Trujillo wrote that "PISD procedures prohibited couples from sitting together when traveling," allowing "for proper supervision and to minimize any inappropriate conduct." *Id.* The letter stated that PISD "does not and did not discriminate in any manner" and is "supportive of any healthy relationship regardless of sexual orientation." *Id.* Two days later, Mr. Flores wrote a letter to Mr. Trujillo, describing the bus incident.

In March 2019, Ms. Dimas completed her season on the Pecos High School girls' basketball team. She then competed on the girls' softball team. Ms. Dimas graduated from Pecos High School in May 2019.

## 2.    Proposed Disputed Material Facts

In her briefing, Ms. Dimas provides a list of facts she contends are material and genuinely disputed. She also includes facts that the district court determined were either immaterial or not genuinely disputed. As we now explain, Ms. Dimas has not identified any genuine disputes of material fact.

Primarily, Ms. Dimas disputes the following facts about the Unwritten Policy: (1) in January 4, 2019, PISD had an unwritten rule prohibiting students who were in a romantic relationship from sitting next to each other on the bus, (2) the Unwritten Policy was not created by Mr. Flores, (3) the purpose of the Unwritten Policy was to

"minimize any inappropriate conduct" between students, and (4) the Unwritten Policy applied to all students, regardless of gender or sexual orientation. Appellant's Br. at 22. Ms. Dimas does not cite materials in the record indicating these facts are genuinely disputed. Nor does she challenge Defendants' cited material. Accordingly, these facts about the Unwritten Policy are not genuinely disputed.[4] *See* Fed. R. Civ. P. 56(c)(1).

Ms. Dimas also provides several facts that are either immaterial or unsupported. For example, Ms. Dimas states that sometime in January 2019, she and her mother had a recorded conversation with Mr. Flores, Mr. Trujillo, and the school principal. Additionally, Ms. Dimas recounts two conversations she had with coaches after the bus incident. She contends these coaches told her that Mr. Flores was requiring them to enforce the Unwritten Policy. Ms. Dimas does not cite any evidence of these conversations, nor does she explain why they are material to her claims. Consequently, the district court concluded the conversations were "unsupported by any evidence." App. Vol. III at 615 n.6. We agree with the district court and do not consider these conversations.

Finally, Ms. Dimas includes the following statements in her factual background that are not supported by citations:

- "While [Ms.] Dimas was open about her sexual orientation with close friends and family members, she did not broadcast or share this

---

[4] Ms. Dimas also disputes that the Unwritten Policy was "longstanding" and "widely known." Appellant's Br. at 23. Because it is immaterial whether the Policy was longstanding and widely known, we need not consider this dispute.

6

information, in a general way, with the school as a whole." Appellant's Br. at 11.

- "Upon returning to the bus and during the trip, other students on the team also questioned [Ms. Dimas] about why she had been taken outside, separated, and asked to sit elsewhere." *Id.* at 14.

- There was "ongoing monitoring of the students' personal relationships, by [Mr.] Flores," which "had a chilling effect on [Ms.] Dimas and her family and other similarly-situated LGBTQ+ students." *Id.* at 19.

- "The Unwritten Policy was in effect, and continually enforced, against [Ms. Dimas] and any other dating LGBTQ+ students attempting to sit together for six (6) months and eleven (11) days after it had been seemingly verbally invented by [Mr.] Flores." *Id.*

Because there is not evidentiary support for these statements, we do not consider them. *See* Fed. R. Civ. P. 56(c)(1).

## B.    *Procedural History*

Ms. Dimas initiated this lawsuit against Pecos High School, PISD, Mr. Flores, and Mr. Trujillo. Generally, she alleged the Unwritten Policy targeted same-sex couples and was not enforced against opposite-sex couples. Ms. Dimas asserted the following claims:

- Count I: Title IX violation ("Title IX claim"), against all Defendants.

- Count II: § 1983 violation for deprivation of Fourteenth Amendment rights ("General Fourteenth Amendment claim"), against all Defendants.

- Count III: § 1983 violation for deprivation of Fourteenth Amendment rights based on failure to train and supervise ("*Monell* claim"), against PISD and Mr. Trujillo.

- Count IV: New Mexico Constitution violation ("New Mexico Constitution claim"), against all Defendants.

7

- Count V: New Mexico Human Rights Act violation ("NMHRA claim"), against all Defendants.

- Count VI: Common law invasion of privacy ("Common Law Invasion of Privacy claim"), against all Defendants.

Ms. Dimas sued Mr. Trujillo in his official and individual capacities, and Mr. Flores in his individual capacity only.

**1.      Defendants' Motion for Partial Judgment on the Pleadings**

Defendants filed a Motion for Partial Judgment on the Pleadings, seeking dismissal of the Title IX, New Mexico Constitution, NMHRA, and Common Law Invasion of Privacy claims. The district court granted the Motion over Ms. Dimas's objection. The district court dismissed the Title IX claim against Mr. Trujillo and Mr. Flores with prejudice because individuals cannot be held liable under Title IX. The court dismissed the Title IX claim against PISD and Pecos High School without prejudice, concluding Ms. Dimas's allegations did not state a plausible Title IX claim.

Next, the district court dismissed the New Mexico Constitution and Common Law Invasion of Privacy claims with prejudice because there was no waiver of sovereign immunity. Finally, the court dismissed the NMHRA claim without prejudice because Ms. Dimas had not exhausted her administrative remedies. After this ruling, the General Fourteenth Amendment and *Monell* claims were the only remaining claims. But the court granted Ms. Dimas leave to amend her Title IX claim as to PISD and Pecos High School, as well as her NMHRA claim.

## 2.    First Amended Complaint

Ms. Dimas filed a First Amended Complaint, which is the operative pleading. She asserted the following claims:

- Count I: Title IX claim, against PISD and Pecos High School.

- Count II: General Fourteenth Amendment claim, against all Defendants.

- Count III: *Monell* claim, against PISD and Mr. Trujillo.

- Count IV: § 1983 violation for deprivation of Fourteenth Amendment right to privacy ("Constitutional Right to Privacy claim"), against PISD, Mr. Trujillo, and Mr. Flores.

Ms. Dimas again sued Mr. Trujillo in his individual and official capacities, and Mr. Flores in his individual capacity only.

## 3.    Defendants' First Motion for Summary Judgment

Before Ms. Dimas filed her First Amended Complaint, Defendants filed a Motion for Summary Judgment on Plaintiff's Federal Claims ("First Motion for Summary Judgment"). In this Motion, Defendants sought summary judgment on the Title IX, General Fourteenth Amendment, and *Monell* claims. Additionally, Mr. Flores and Mr. Trujillo asserted qualified immunity.

Defendants also filed a Motion to Stay Discovery, requesting a stay pending a ruling on qualified immunity. Ms. Dimas opposed the stay. Additionally, in her Response to the First Motion for Summary Judgment, Ms. Dimas requested limited discovery under Federal Rule of Civil Procedure 56(d).

The district court stayed discovery, reasoning that a stay was appropriate given the qualified immunity defense. The district court then granted in part the First

9

Motion for Summary Judgment. The court first denied as moot the requested dismissal of the Title IX claim because the court had previously granted Ms. Dimas leave to amend that claim. The court, however, dismissed all claims against Pecos High School with prejudice because it is a non-suable entity.

The court next dismissed the General Fourteenth Amendment claim against Mr. Flores and Mr. Trujillo, concluding they were entitled to qualified immunity. Concerning substantive due process, the court reasoned that Ms. Dimas had "failed to show a deprivation of a protected interest—[she] was not denied participation in sports or academics—or any action that shocks the conscience." App. Vol. II at 447. And concerning equal protection, Ms. Dimas failed to show she was treated differently than other similarly situated individuals or that the Unwritten Policy had a disparate impact on same-sex couples. Because Ms. Dimas had not shown a constitutional violation, the district court concluded Mr. Flores and Mr. Trujillo were entitled to qualified immunity.

The court also dismissed the *Monell* claim against PISD and Mr. Trujillo. As to the claim against PISD, the court concluded Ms. Dimas failed to show there was "a custom or practice of only separating LGBTQ+ students." *Id.* at 453. It further concluded Ms. Dimas had "not identified any specific training or supervision that is allegedly inadequate." *Id.* at 454. The court next concluded Mr. Trujillo could not be held liable as a supervisor because there were no underlying constitutional violations.

Last, the district court denied Ms. Dimas's request for additional discovery under Rule 56(d). The court denied her request on procedural grounds, explaining

10

that Ms. Dimas "waived her right to seek additional discovery" by filing a Response to Defendants' First Motion for Summary Judgment. *Id.* at 458. But the court also concluded Ms. Dimas failed to meet the substantive requirements of Rule 56(d) because her request was "vague" and "unspecific," and she did not identify what steps she had taken to obtain discovery. *Id.*

After this ruling, the remaining claims were the Title IX claim, the General Fourteenth Amendment claim against PISD, and the Constitutional Right to Privacy claim.

**4.      Defendants' Later Motions for Summary Judgment**

Defendants filed two additional Motions for Summary Judgment, seeking dismissal of the Title IX claim and the Constitutional Right to Privacy claim. Ms. Dimas responded to both Motions by filing Rule 56(d) Motions to Obtain Discovery. The district court denied both Motions, concluding Ms. Dimas had "not linked the requested discovery to the legal arguments raised by Defendant[s]" and had "not explained how the requested discovery is essential." *Id.* at 540.

After the court denied her Rule 56(d) Motions, Ms. Dimas filed Responses to the pending Motions for Summary Judgment. The district court then granted summary judgment in Defendants' favor, dismissing the Title IX and Constitutional Right to Privacy claims.

Concerning the Title IX claim, the district court concluded Ms. Dimas had not established a prima facie case of sex-based discrimination. This was because the Unwritten Policy was facially neutral, and Ms. Dimas relied on a single incident

11

without showing a disparate impact on same-sex couples. The court further concluded that Ms. Dimas had not demonstrated teacher-on-student discrimination because she had not shown the alleged harassment was "so severe, pervasive and objectively offensive that it deprived [her] of the educational benefits or opportunities provided from the school." App. Vol. III at 619. The court thus dismissed the Title IX claim.

The district court then considered the Constitutional Right to Privacy claim. The court first ruled that Ms. Dimas did not have leave to include this claim in her First Amended Complaint. Accordingly, the court dismissed the claim under Federal Rule of Civil Procedure 15(a)(2). But the court also dismissed the claim on its merits, concluding there was no constitutional violation.

The court entered Final Judgment, although the General Fourteenth Amendment claim against PISD had not been dismissed. Ms. Dimas timely appealed.

## II.    DISCUSSION

We first consider whether we have appellate jurisdiction. Because we conclude we have appellate jurisdiction, we then address Ms. Dimas's arguments on appeal. We hold that the district court did not abuse its discretion by staying discovery and that it properly dismissed the Title IX and Constitutional Right to Privacy claims. We also conclude that Ms. Dimas waived any arguments concerning her General Fourteenth Amendment and *Monell* claims.

12

### A.    Appellate Jurisdiction

The district court did not explicitly dismiss the General Fourteenth Amendment claim against PISD. Nevertheless, we conclude there was an appealable final decision because the district court clearly intended to dismiss the claim against PISD. *See* 28 U.S.C. § 1291.

The courts of appeals "have jurisdiction of appeals from all final decisions of the district courts of the United States." *Id.* For purposes of appeal, "a final decision does not normally occur 'until there has been a decision by the [d]istrict [c]ourt that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.""" *McClendon v. City of Albuquerque*, 630 F.3d 1288, 1292 (10th Cir. 2011) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521–22 (1988)). Put differently, a final decision must "terminate all matters as to all parties and causes of action." *Sarkar v. McCallin*, 636 F.3d 572, 574 (10th Cir. 2011). However, we may consider a judgment to be final "where a district court clearly intended to enter a final judgment as to all claims and all parties but failed to do so because of 'a clerical mistake or a mistake arising from oversight or omission.'" *Id.* (quoting Fed. R. Civ. P. 60(a)).

Here, the district court dismissed the General Fourteenth Amendment claim against Mr. Flores and Mr. Trujillo after concluding Ms. Dimas had failed to show a constitutional violation. Without an underlying constitutional violation, PISD cannot be liable. *See Doe v. Woodard*, 912 F.3d 1278, 1290 (10th Cir. 2019) ("Supervisors cannot be liable under § 1983 where there is no underlying violation of a

13

constitutional right by a supervisee."). Accordingly, when the district court determined there was no underlying constitutional violation, it implicitly determined that the claim against PISD failed. It is thus clear that the court intended to dismiss the General Fourteenth Amendment claim against PISD. *See Sarkar*, 636 F.3d at 574–75 (concluding there was appellate jurisdiction when a district court entered judgment in favor of a defendant in her official capacity only, although she had also been sued in her individual capacity).

Although the district court did not expressly terminate all claims, it is "abundantly clear that the district court intended to enter judgment in favor of all Defendants." *Id.* at 574. As a result, we consider the judgment to be an appealable final decision. 28 U.S.C. § 1291.

### B.    *Discovery*

Recall that the district court stayed discovery after Mr. Trujillo and Mr. Flores asserted qualified immunity. The district court later denied Ms. Dimas's requests for additional discovery under Rule 56(d). Ms. Dimas challenges these rulings on appeal, contending she "should have been afforded discovery before being ordered to respond to [Defendants'] numerous summary judgment motions." Appellant's Br. at 35 (emphasis omitted). We first address the discovery stay and then the Rule 56(d) Motion concerning the Title IX claim.[5] We conclude that Ms. Dimas has not shown the district court abused its discretion.

---

[5] Ms. Dimas also challenges the denial of discovery for her other claims. But the Title IX claim is the only claim we evaluate on its merits. *See infra* Sections II.D,

**1.    Discovery Stay**

Qualified immunity is an "entitlement to immunity from suit and other demands of litigation." *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992). Accordingly, "[d]iscovery should not be allowed until the court resolves the threshold question whether the law was clearly established at the time the allegedly unlawful action occurred." *Id.*; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed."). We review a decision to stay discovery for abuse of discretion. *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1386 (10th Cir. 1994); *see also Crawford-El v. Britton*, 523 U.S. 574, 597–98 (1998) (stating that the district court "must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings").

Here, the district court granted Defendants a stay of discovery after Mr. Flores and Mr. Trujillo asserted qualified immunity. Although the qualified immunity defense was not applicable to all claims, the court reasoned that a "partial stay" was inadequate and "could drag the [c]ourt into endless disputes about to whom the discovery stay applies and to which counts [Ms. Dimas] may proceed with discovery." App. Vol. II at 353. The court's reasoning was based in part on Ms. Dimas's "broad" discovery requests that "lack[ed] specificity." *Id.* at 353–54.

---

II.E. Accordingly, we need only review the Rule 56(d) Motion concerning the Title IX claim.

Additionally, the court explained that although discovery would be stayed, it "may choose to authorize certain Rule 56(d) discovery." *Id.* at 355.

Ms. Dimas challenges this ruling on appeal, but she does not engage with the district court's reasoning or the underlying authority. Thus, she has not shown the court abused its discretion, particularly considering the qualified immunity defense, the intertwined nature of the claims, and the court's willingness to consider future requests for more tailored discovery.

## 2.    Rule 56(d) Motion

In response to a motion for summary judgment, a nonmoving party "may request additional discovery by showing via affidavit or declaration that without discovery 'it cannot present facts essential to justify its opposition.'" *Gutierrez v. Cobos*, 841 F.3d 895, 907–08 (10th Cir. 2016) (quoting Fed. R. Civ. P. 56(d)). To obtain additional discovery, the nonmovant "must specify (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment." *Id.* at 908 (alteration in original) (quotation marks omitted). Although Rule 56(d) motions are typically "entitled to liberal treatment," "the mere assertion that evidence supporting a party's allegation is in the opposing party's hands is insufficient."[6] *Jones v. City & Cnty. of*

---

[6] A court's discretion to grant Rule 56(d) relief is "limited when a summary judgment motion is based on qualified immunity." *Jones v. City & Cnty. of Denver*, 854 F.2d 1206, 1211 (10th Cir. 1988). PISD's Motion for Summary Judgment on the Title IX claim did not assert a qualified immunity defense, but qualified immunity

*Denver*, 854 F.2d 1206, 1210–11 (10th Cir. 1988).[7] We review a district court's

ruling on a Rule 56(d) motion for abuse of discretion. *Birch v. Polaris Indus., Inc.*,

812 F.3d 1238, 1249 (10th Cir. 2015).

In response to PISD's Motion for Summary Judgment on the Title IX claim,

Ms. Dimas requested broad discovery. To illustrate, she describes her Rule 56(d)

Motion as seeking discovery on the following topics:

> 1) The Unwritten Policy's creation; 2) The Unwritten Policy's rationale;
> 3) Other instances of enforcement against both LGBTQ+ and opposite
> gender couples; 4) pervasiveness of enforcement and monitoring, through
> other coaches and school personnel, for months after the initial incident;
> 5) personal animus and opinions of LGBTQ+ students or same-sex dating
> relationships, in general, held by those creating and enforcing the
> discriminatory policy; in addition to numerous other areas of reasonable
> and legitimate inquiry.

Appellant's Br. at 35–36. Although these general topics may be relevant to

Ms. Dimas's Title IX claim, they fail to meet Ms. Dimas' burden to specify

"probable facts" she hoped to discover. *Gutierrez*, 841 F.3d at 908 (quotation marks

omitted). Indeed, Ms. Dimas was required to specify what steps she had taken "to

---

was pending before the district court on the Constitutional Right to Privacy claim.
Even in the absence of a qualified immunity defense to the Title IX claim, the district
court did not abuse its discretion in denying Ms. Dimas' Rule 56(d) Motion.
Accordingly, we need not decide whether the district court's discretion to grant relief
was limited by the pending qualified immunity defense on the Constitutional Right to
Privacy claim.

[7] Before 2010, the substantive requirements of Rule 56(d) were contained in
Federal Rule of Civil Procedure 56(f). *See* Fed. R. Civ. P. 56(d) advisory
committee's note to 2010 amendment ("Subdivision (d) carries forward without
substantial change the provisions of former subdivision (f)."). Accordingly, cases
before the 2010 amendment discussed Rule 56(f). *See, e.g.*, *Jones*, 854 F.2d at 1210–
11.

obtain these facts" and how they would help her "rebut the motion for summary judgment." *Id.* (quotation marks omitted). But her Rule 56(d) Motion does not include those specifics. It does not, for example, identify materials or depositions and explain why they are "essential" to rebutting PISD's Title IX arguments. Fed. R. Civ. P. 56(d); *see also Lewis v. City of Ft. Collins*, 903 F.2d 752, 759 (10th Cir. 1990) (holding district court abused its discretion by granting additional discovery because the plaintiff did not explain "how any specific documents or depositions will aid in rebutting defendants' showing of objective reasonableness").

Further, Ms. Dimas was on notice that her broad discovery requests were insufficient. Earlier in the litigation, Ms. Dimas had requested similar discovery. The district court denied this request, in part because Ms. Dimas "failed to narrowly identify the facts to be discovered and fail[ed] to assert steps taken to obtain that discovery except for the very broad discovery served upon [Mr.] Flores." App. Vol. II at 355. Accordingly, when Ms. Dimas sought discovery concerning the Title IX claim, she was on notice that her request needed to be more specific.

For these reasons, the district court acted within its discretion when it denied Ms. Dimas's request for additional discovery on her Title IX claim.

### C.    *Title IX Claim*

Ms. Dimas asserts PISD violated Title IX by discriminating against her on the basis of sex.[8] Specifically, she argues that had her sex been different (i.e., if she were

---

[8] The district court dismissed the Title IX claim against Mr. Flores and Mr. Trujillo, concluding Title IX claims may not be asserted against individuals.

male), she would have been allowed to sit with her girlfriend.[9] We affirm the dismissal of this claim because Ms. Dimas has not established a prima facie case of sex-based discrimination.

We review a grant of summary judgment de novo, viewing all facts and reasonable inferences drawn therefrom "in the light most favorable to the nonmoving party." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In relevant part, Title IX states, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). To succeed on a Title IX claim, "a plaintiff must show: (1) that he or she was excluded from participation in,

---

Likewise, the district court dismissed the Title IX claim against Pecos High School after concluding Pecos High School is a non-suable entity. On appeal, Ms. Dimas does not address these rulings or argue they are incorrect. She thus waived any challenge to the dismissal of the Title IX claim against Mr. Flores, Mr. Trujillo, and Pecos High School. *See Phillips v. Calhoun*, 956 F.2d 949, 954 (10th Cir. 1992) ("[E]ven issues designated for review are lost if they are not actually argued in the party's brief.").

[9] For purposes of this appeal, we assume that under Title IX, discrimination on the basis of sexual orientation is sex-based discrimination. *See Bostock v. Clayton Cnty.*, 590 U.S. 644, 669 (2020) (holding that under Title VII, "discrimination based on homosexuality or transgender status necessarily entails discrimination based on sex").

denied the benefits of, or subjected to discrimination in an educational program; (2) that the program receives federal assistance; and (3) that the exclusion from the program was on the basis of sex."[10] *Seamons v. Snow*, 84 F.3d 1226, 1232 (10th Cir. 1996).

If a Title IX plaintiff relies on "indirect proof of discrimination," then "we apply the three-part burden-shifting framework announced in *McDonnell Douglas*." *Doe v. Univ. of Denver*, 1 F.4th 822, 829 (10th Cir. 2021) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework, the plaintiff must first establish a prima facie case of discrimination. *Id.* at 829, 831. This requires the plaintiff to present evidence from which a reasonable jury could "find that sex was a motivating factor" in the defendant's adverse action. *Id.* at 830. Here, Ms. Dimas neither applies the *McDonnell Douglas* framework nor argues it is inapplicable. We conclude it is applicable because Ms. Dimas relies on indirect proof of discrimination. Consequently, Ms. Dimas must provide evidence that her sex was a motivating factor in the Unwritten Policy's enforcement. We conclude she has not come forward with such evidence, and thus, the district court correctly granted summary judgment on her Title IX claim.

It is undisputed that on its face, the Unwritten Policy applied to all couples, not just same-sex couples. *See supra* Section I.A. Nonetheless, Ms. Dimas argues that the Policy was selectively enforced against same-sex couples and that had she been

---

[10] It is undisputed that PISD receives federal assistance.

male, she would have been allowed to sit with her girlfriend.[11] But Ms. Dimas has not provided any evidence the Unwritten Policy was selectively enforced against same-sex couples. The bus incident underlying this case is the only instance of enforcement Ms. Dimas cites, and she points to no evidence she was asked to move seats because of her sex. Nor does Ms. Dimas provide any evidence that the Unwritten Policy was *not* enforced against opposite-sex couples. Further, Ms. Dimas has not provided any evidence indicating the Unwritten Policy was adopted for discriminatory reasons, while Defendants provided evidence it was adopted to prevent inappropriate behavior irrespective of sexual orientation. *See supra* Section I.A. For these reasons, Ms. Dimas has not shown her sex was a motivating factor in enforcement of the Policy, and she therefore failed to make a prima facie showing of sex-based discrimination. *See Doe*, 1 F.4th at 829–30.

Ms. Dimas's arguments to the contrary are unavailing. First, she cites the letter she wrote after the bus incident as evidence "that she had never once seen the [Unwritten Policy] enforced against an opposite gender couple." Appellant's Br. at 14 (citing App. Vol. I at 239). But in her letter, Ms. Dimas states only that "boys and

---

[11] Although the district court considered whether the Unwritten Policy disparately impacted same-sex couples, Ms. Dimas's argument, best framed, is that the Policy was selectively enforced against same-sex couples. *See Doe v. Univ. of Denver*, 1 F.4th 822, 830 (10th Cir. 2021) (recognizing that in a Title IX case, "evidence of an erroneous outcome or selective enforcement are means by which a plaintiff might show that sex was a motivating factor"); *see also Doe v. Univ. of Denver*, 952 F.3d 1182, 1193 n.8 (10th Cir. 2020) (noting that although "we have suggested that a Title IX disparate-impact claim might be viable," "we have never directly addressed the issue").

girls from different teams can walk around and hold hands and nothing is said about it." App. Vol. I at 239. Assuming this is true, it does not show the Unwritten Policy—which concerned bus seating on athletic trips—was selectively enforced against same-sex couples.

Ms. Dimas also argues the district court incorrectly applied the summary judgment standard because it did not adopt her "version of reality." Appellant's Br. at 30. Certainly, the district court was required to view facts and reasonable inferences in the light most favorable to Ms. Dimas. *See Trainor*, 318 F.3d at 979. But it was not required to view a lack of evidence in her favor. *See id.* Ms. Dimas had the initial burden of establishing a prima facie case of sex-based discrimination by coming forward with evidence in support of her claim. *See Doe*, 1 F.4th at 829. She failed to meet that burden.

Similarly, Ms. Dimas faults PISD for not producing "any evidence of ever having enforced the [Unwritten Policy] against any non-LGBTQ+ students." Appellant's Br. at 32. But again, under the *McDonnell Douglas* framework, Ms. Dimas had the initial burden. *See Doe*, 1 F.4th at 829. And regardless, PISD could meet its burden at summary judgment by showing Ms. Dimas did not "have enough evidence to carry [her] burden of persuasion at trial." *Trainor*, 318 F.3d at 979. PISD was not required to produce evidence showing the Unwritten Policy had been enforced against opposite-sex couples.

Finally, Ms. Dimas argues she has experienced "severe and pervasive" harassment. Appellant's Br. at 42. Although somewhat unclear, she appears to be

arguing that she has demonstrated a Title IX claim based on teacher-on-student sexual harassment. "[A] recipient of federal education funds may be liable in damages under Title IX where it is deliberately indifferent to known acts of sexual harassment by a teacher." *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 641 (1999) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998)). A plaintiff alleging teacher-on-student sexual harassment must show that the defendant "(1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school." *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1246 (10th Cir. 1999) (applying this test to student-on-student discrimination); *see also Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1152 (10th Cir. 2006) (applying this test to teacher-on-student discrimination).

Here, the district court considered whether Ms. Dimas had demonstrated teacher-on-student sexual harassment, and it concluded she had not. The court first explained that because Ms. Dimas had not shown sex-based discrimination, she necessarily had not shown sexual harassment. Alternatively, the court concluded "the alleged harassment was not so severe, pervasive and objectively offensive that it deprived [Ms. Dimas] of the educational benefits or opportunities provided from the school." App. Vol. III at 619.

We agree that because Ms. Dimas has not provided any evidence her sex was a motivating factor in the Policy's enforcement, she necessarily has not demonstrated

23

sexual harassment that could support a teacher-on-student harassment claim. *See Escue*, 450 F.3d at 1152 ("Sexual harassment is a form of discrimination on the basis of sex and is actionable under Title IX."). Accordingly, we need not address the district court's alternative ruling that the alleged harassment was not sufficiently severe or pervasive.

Ms. Dimas has not made a prima facie showing of sex-based discrimination. Thus, the district court properly dismissed her Title IX claim.

### D.    *Constitutional Right to Privacy Claim*

Applying Rule 15(a)(2), the district court dismissed Ms. Dimas's Constitutional Right to Privacy claim because she did not have leave to add this claim to her First Amended Complaint. The court also dismissed this claim on its merits. Ms. Dimas challenges both rulings. We affirm, without reaching the merits, because Ms. Dimas did not comply with Rule 15(a)(2).

After certain litigation milestones have passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The relevant milestones had passed when Ms. Dimas filed her First Amended Complaint, which added the Constitutional Right to Privacy claim. Accordingly, Ms. Dimas needed Defendants' consent or the district court's leave to include the Constitutional Right to Privacy claim. She had neither.

In its Order Granting Partial Judgment on the Pleadings, the district court gave Ms. Dimas leave to amend her Title IX and NMHRA claims. The district court did not give Ms. Dimas leave to amend her Common Law Invasion of Privacy claim, nor

did it grant her leave to add new claims. Moreover, Defendants did not consent to Ms. Dimas adding a new claim.

When Defendants objected to the newly added Constitutional Right to Privacy claim, Ms. Dimas "concede[d] that procedurally an opposed motion may have been required before adding this claim as an additional count." App. Vol. III at 584. The district court agreed, stating it "did not grant [Ms. Dimas] leave to amend to add an additional count." *Id.* at 621. Consequently, the district court dismissed the Constitutional Right to Privacy claim under Rule 15(a)(2).

As an initial matter, Ms. Dimas did not challenge the district court's Rule 15(a)(2) ruling in her Opening Brief. Therefore, any challenge to that ruling is waived. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."). But even considering Ms. Dimas's belated arguments, we perceive no error in the district court's ruling. Ms. Dimas had neither Defendants' consent nor the district court's leave to add a new claim, so the district court did not err in dismissing the Constitutional Right to Privacy claim. *See* Fed. R. Civ. P. 15(a)(2).

### E.    *General Fourteenth Amendment &* **Monell** *Claims*

Ms. Dimas states she is challenging the dismissal of her General Fourteenth Amendment and *Monell* claims.[12] We conclude that any arguments concerning these claims were inadequately presented on appeal and thus are waived.

As to the General Fourteenth Amendment claim, Ms. Dimas asserted all Defendants violated her procedural due process, substantive due process, and equal protection rights. The district court dismissed this claim, concluding that Pecos High School is a non-suable entity, and that Mr. Trujillo and Mr. Flores were entitled to qualified immunity because Ms. Dimas had not shown a constitutional violation. On appeal, Ms. Dimas does not acknowledge these rulings or argue they are incorrect. She does argue Defendants are not entitled to qualified immunity, but those arguments concern Title IX[13] and do not cite the district court's ruling dismissing the General Fourteenth Amendment claim. And to the extent Ms. Dimas discusses substantive due process, that discussion is limited to her Constitutional Right to Privacy claim. Accordingly, Ms. Dimas waived any challenge to the dismissal of her

---

[12] In her Opening Brief, Ms. Dimas also states she is appealing the "dismissal of Counts I, IV, V, VI . . . of her original Complaint." Appellant's Br. at 8. Nonetheless, she did not present arguments concerning the New Mexico Constitution claim (Count IV), the NMHRA claim (Count V), or the Common Law Invasion of Privacy claim (Count VI). And when asked at oral argument what claims are on appeal, she did not identify these claims. Accordingly, we do not review the dismissals of the New Mexico Constitution, NMHRA, or Common Law Invasion of Privacy claims.

[13] Although the district court did not dismiss the Title IX claim based on qualified immunity, Ms. Dimas discusses Title IX and qualified immunity together.

General Fourteenth Amendment claim by not adequately addressing it on appeal. *See Bronson*, 500 F.3d at 1104; *see also Burke v. Regalado*, 935 F.3d 960, 1014 (10th Cir. 2019) ("[A]n appellant may waive an issue by inadequately briefing it.").

In her *Monell* claim, Ms. Dimas asserted a § 1983 against PISD and Mr. Trujillo for failure to train and supervise. The district court dismissed this claim because Ms. Dimas did not come forward with evidence of a policy or custom of separating only same-sex couples. The district court also concluded she failed to identify any "training or supervision that is allegedly inadequate." App. Vol. II at 454. Finally, the court noted PISD could not be liable under *Monell* because Ms. Dimas "failed to show an underlying constitutional violation by any PISD employee." *Id.* at 454 n.8. Ms. Dimas does not cite this ruling or otherwise explain why it is incorrect. And although she references the "*Monell* supervisory claims," the references are perfunctory and are not accompanied by any analysis of *Monell* or authority governing supervisory liability. *See* Appellant's Br. at 56; Reply at 29. Ms. Dimas does not, for example, address the district court's conclusion that she failed to identify the allegedly inadequate training and supervision. Ms. Dimas thus waived any challenge to the dismissal of her *Monell* claim. *See Burke*, 935 F.3d at 1014.

## III.    CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

Entered for the Court


Carolyn B. McHugh
Circuit Judge